**SO ORDERED.**

**SIGNED this 22 day of December, 2008.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line and print publication

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

JACK EDSEL MELVIN, JR.,                    CASE NO.  07-22352
                                           CHAPTER  13
                        DEBTOR.

### MEMORANDUM OPINION AND ORDER ON LEGAL QUESTION REGARDING
### CREDITOR'S OBJECTION TO CONFIRMATION

The matter under advisement is the legal question of the methodology for determining the

amount that must be committed to a Chapter 13 plan by an above median income debtor to

satisfy 11 U.S.C. § 1325(b)(1)(B), where the proposed plan, to which a creditor objects, relies

upon income and expenses reported on Schedules I and J rather than Form B22C.  Debtor Jack

Edsel Melvin, Jr. appears by Cynthia F. Grimes, of Grimes & Rebein, L.C.  Objecting unsecured

creditor, eCAST Settlement Corporation (hereafter "eCAST") appears by Larry A. Pittman, II, of

Schmitt Manz Swanson & Mulhern P.C. There are no other appearances. The Court has jurisdiction.[1]

**BACKGROUND FACTS.**

Debtor filed a voluntary petition under Chapter 13 on October 18, 2007, after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter BAPCPA).[2] He is an above median income debtor and proposes a 60 month plan[3] that provides $500 per month, his "monthly net income" as shown on Schedules I and J, for payment to general unsecured creditors. Debtor's Form B22C reports monthly disposable income of $1,661.93.

eCAST, the holder of approximately 52% of Debtor's scheduled unsecured, nonpriority debt, objects to confirmation because it claims the plan does not apply all of Debtor's projected disposable income to payment to unsecured creditors as required by § 1325(b)(1)(B).[4] The Chapter 13 Trustee also objects to confirmation for several reasons, including the assertion that the "plan does not propose to pay the GU Pool resulting from the means test of $96,941.80."[5]

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Matters relating to confirmation of plans are core proceedings which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(L).

[2] For convenience, citations to pre-BAPCPA statutes will be to the 2004 United States Code.

[3] Doc. 4.

[4] Doc. 18.

[5] Doc. 20.

2

The Court approved the parties' planning conference report that provided for the parties to "submit to the Court the legal issue raised by eCAST: Whether the formula for determining disposable income to be paid into the plan under § 1325 should be based on Schedule I income minus Form B22C expenses/deductions."[6]  After briefs on this legal question were filed by eCAST and the Debtor, the Court took the issue under advisement.

**NATURE OF THE CONTROVERSY.**

BAPCPA did not alter the central requirement of confirmation that the debtor pay all projected disposable income into the plan.  Both before[7] and after BAPCPA, § 1325(b)(1) provides that if the trustee or the holder of an allowed unsecured claim objects to confirmation, the court may not approve the plan unless, as of the effective date of the plan, the plan provides for payment of such claim in full or "the plan provides that all of the debtor's *projected disposable income* to be received [during the term of the plan] will be applied to make payments to unsecured creditors under the plan."[8]  This confirmation standard is referred to as the means test.

 "Projected disposable income" is not defined.  However, prior to BAPCPA, § 1325(b)(1) defined "disposable income" to mean "income received by the debtor and which is not reasonably necessary to be expended" for the maintenance or support of the debtor or a dependent of the debtor, for certain charitable contributions, and for certain business expenses.[9]

---

[6] Doc.  37.

[7] 11 U.S.C. § 1325(b)(1) (2004).

[8] 11 U.S.C. § 1325(b)(1) (2006)(emphasis supplied).

[9] 11 U.S.C. §  1325(b)(2) (2004).

3

Based upon this requirement, the projected disposable income available to a debtor for repayment of unsecured debts was typically determined by subtracting the expenses reported on Schedule J from the income reported on Schedule I and then multiplying by the length of the plan.[10]   "However, if the bankruptcy court had reason to believe that those schedules did not accurately predict a debtor's actual ability to pay, other evidence was also considered."[11]

---

[10] *See In re Lanning*, 380 B.R. 17, 20 (10th Cir. BAP 2007).

[11] *Id.*, 380 B.R. at 24.

4

BAPCPA amended § 1325(b)(2)[12] by adding the adjectives "current monthly" to the word "income," excluding some child support related income, and allowing deductions of expenses for certain domestic support obligations. Nevertheless, the basic structure of § 1325(b)(2) did not change. However, the change from "income," which was not defined by the Code, to "current monthly income" is not as inconsequential as it may appear because BAPCPA

---

[12] Prior to BAPCPA, 11 U.S.C. § 1325(b)(2) (2004) provided:

> 2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended–
> (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made, and
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Section 1325(b)(2), as amended by BAPCPA, provides:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

5

also added a definition of "current monthly income" in § 101(10A). "Current monthly income" is now a historical figure based upon debtor's actual income, from all sources, except social security and certain victim payments, received during the six months prior to filing.[13]

In addition, the BAPCPA made material changes to § 1325 for high income debtors. The amendment at issue in this case is the addition of § 1325(b)(3), which defines "amounts reasonably necessary to be expended" for above median income debtors.[14] The test for being such a debtor is whether the debtor's "current monthly income," when multiplied by 12, is greater than the median income levels provided by the United States Census Bureau for individuals living in the debtor's locality for debtor's family size. New § 1325(b)(3) provides that if the debtor is an above median income debtor based upon this comparison, then "amounts

---

[13] 11 U.S.C. § 101(10A) provides in part:

> (10A) The term "current monthly income"–
> (A) means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on–
>
> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or . . .
>
> (B) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor . . ., but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity . . ., and payments to victims of international terrorism . . ..

[14] 11 U.S.C. § 1325(b)(3) provides in relevant part:

> (3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than–
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

6

reasonably necessary to be expended" for the purpose of § 1325(b)(2) are determined by §§ 707(b)(2)(A) and (B), also enacted by BAPCPA.[15] Most expenses allowed by § 707(b)(2)(A) fall into three groups. First, § 707(b)(2)(A)(ii)(I) provides monthly expenses shall be those allowed under the National Standards and the Local Standards of the Internal Revenue Service (IRS) for the area in which the debtor resides, as in effect on the date of the order for relief (which are determined independent of a debtor's actual expenses), and debtors' actual monthly expenses for the categories specified as Other Necessary Expenses used by the IRS for the area in which the debtor resides (see Form B22C, Part IV, Subpart A). Second, §§ 707(b)(2)(A)(ii)(I)-(V) provide a debtor's monthly expenses may include, if applicable, enumerated specific items of additional actual expense (see Form B22C, Part IV, Subpart B). These include, if reasonable and necessary, health insurance, disability insurance, and health savings account expenses; costs for protection against family violence; excess home energy costs; actual expenses for care and support of household members with critical needs; expenses for a child's elementary and secondary education; an allowance for housing and utilities in excess of those specified by the local standard; an additional allowance for food and clothing of up to 5% of the national standard; and continued charitable contributions. Third, pursuant to § 707(b)(2)(A)(iii), allowed expenses include the amount contractually due to secured creditors in each month for 60 months following the date of the petition (see Form B22C, Part IV, Subpart C). In addition, Chapter 13 administrative expenses and payments on priority claims are allowed by § 707(b)(2)(A)(ii)(III) and § 707(b)(2)(A)(iv), respectively. Section 707(b)(2)(B) allows

---

[15] 11 U.S.C. § 1325(b)(3).

7

inclusion of expenses satisfying the special circumstances test for rebutting the presumption of abuse.

As referenced above, Form B22C has been developed to assist in the calculation of income and expenses as defined by the Code. It is used to calculate "current monthly income," to determine whether that income is above or below the applicable median income, and, if so, to calculate disposable income as defined by § 1325(b)(3).

The result is that after BAPCPA, many of an above median income debtor's major expenses, such as housing, utilities, food, and transportation, are based upon the IRS standards, not the debtor's actual expenses, either historical or projected. This is in contrast to Schedule J, on which the expenses are all related to the debtor's actual experience or projected future actual expenses. The result is that for above median income debtors disposable income calculated in accord with the BAPCPA amendments may materially deviate (either above or below) from the disposable income calculated as the difference between income on Schedule I and expenses on Schedule J. However, Schedules I and J remain relevant, as they provide evidence of feasability.

In this case, Debtor has above median income, so § 1325(b)(3) applies. The issue is whether as a condition of confirmation under § 1325(b)(1), the calculation of Debtor's "projected disposable income" must strictly conform with the amounts reported on Form B22C. Debtor, when calculating projected disposable income, uses income from Schedule I, which is less than that on Form B22C, and expenses from Schedule J, which are higher than Form B22C. Debtor argues that although it makes sense to stringently apply § 707(b) for the purpose of directing more debtors into Chapter 13, "it is fundamentally inconsistent with the long stated purposes of chapter 13 and bankruptcy relief to construe these provisions so that an otherwise

8

good faith debtor . . . cannot qualify for chapter 7 but cannot feasibly perform a chapter 13, and so by trick of artificial standards of income and expense is denied any bankruptcy relief whatsoever!"[16] Although Creditor does not object to Debtor's use of income slightly less than that on Form B22C, if that income is ultimately supported by evidence offered by Debtor, eCAST does contend that the expenses must be those reported on Form B22C, as § 1325(b)(3) uses the word "shall" when incorporating § 707(b)(2) for the purpose of determining "amounts reasonably necessary to be expended."

To put this controversy in perspective, the income and expenses as reported on Debtor's schedules and Form B22C and the parties' positions are summarized as follows:

|  | Schedules I & J | Form B22C | Debtor | eCAST |
|---|---|---|---|---|
| **Income** | $5,406.88[17] | $8,533.00[18] | $5,406.88 | $8,449.50[19] |
| **Expenses** | $4,906.75[20] | $6,871.07[21] | $4,906.75 | $6,871.07 |
| **Net** | $500.13 | $1,661.93 | | |
| **Projected disposable monthly income** | | | $500.13 | $1,578.43 |

Debtor's plan proposes payments of $500 per month for 60 months. eCAST contends as a condition of confirmation, Debtor must make plan payments of $1,578.43 per month for 60

---

[16] Doc. 44, p. 9.

[17] Schedule I, line 15 (Average monthly income).

[18] Form B22C, line 14 (Current monthly income).

[19] $7,879.50 Schedule I, Line 1 (Monthly gross income), plus $570 Schedule I, line 13 (Other monthly income).

[20] Schedule J, line 18 (Average monthly expenses).

[21] Form B22C, line 57 (Total adjustments to determine disposable income).

months.  In addition to disagreeing about the formula which should be used, the parties also question the allocation of the burden of proof.

**ANALYSIS.**

### A. FOR ABOVE MEDIAN INCOME DEBTORS, PROJECTED DISPOSABLE INCOME NEED NOT BE BASED EXCLUSIVELY UPON FORM B22C.

For above median income debtors, BAPCPA amendments to § 1325 redefined disposable monthly income; it is now the difference between current monthly income, defined by § 101(10A), and debtor's monthly expenses, defined by §§ 707(b)(2)(A) and (B).  Courts' efforts to make sense of the new provisions have focused upon whether disposable monthly income, so defined, is really equivalent to "projected disposable monthly income," which §1325(b)(1)(B) requires must be devoted to plan payments.[22]  The question is whether the statutory language dictates that a debtor is required to repay unsecured creditors the amount reported on Form B22C,[23] without regard to the debtor's actual ability to pay, or whether the courts have some discretion to consider the projections in Schedules I and J when determining projected disposable income.

Some courts, including at least one circuit court,[24] adopt the first view, often called the mechanical approach.  *In re Alexander*[25] illustrates this position.  It relied upon the principle that

---

[22] *See* Alane A. Becket, *Projected Disposable Income in Chapter 13: A Menu of Fact, Fiction and Forms*, 26 Am. Bankr. Inst. J. 20 (May 2007).

[23] In this opinion, the Court does not address the proper construction of  § 707(b) or completion of Form B22C.  It assumes as a starting point, that given the debtor's circumstances before and on the date of filing, Form B22C was completed in accord with the Code, as construed by applicable case law.

[24] *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008).

[25] *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).  *See  e.g., In re Austin*, 372 B.R. 668, 676 -77 (Bankr. D. Vt. 2007); *In re Kolb,* 366 B.R. 802, 813-18 (Bankr. S.D. Ohio 2007).

"[d]espite criticisms that the old law was better, in discerning congressional intent, the starting point is the 'existing statutory text' and 'not the predecessor statutes.'"[26]  The *Alexander* court found subsection 1325(b)(2) and (3) "plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law."[27]  The court noted that "projected disposable income" is a term which predates BAPCPA and was generally calculated by multiplying the debtor's monthly income on Schedule I, minus expenses on Schedule J, by the plan duration.  Similarly, the court found that to arrive at "projected disposable income" under BAPCPA, "one simply takes the calculation mandated by § 1325(b)(2) and does the math."[28]

     The Ninth Circuit adopted the mechanical approach and, quoting *Alexander*, reasoned:

> Section 1325 uses the term "disposable income" in only two places- § 1325(b)(1)(B) ("projected disposable income") and § 1325(b)(2) (defining "disposable income").  The substitution of any data not covered by the § 1325(b)(2) definition in the "projected  disposable income" calculation would render as surplusage the definition of "disposable income" found in § 1325(b)(2).  There can be no reason for § 1325(b)(2) to exist other than to define the term "disposable income" as used in § 1325(b)(1)(B).  "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."  The plain meaning of the word "projected," in and of itself, does not provide a basis for including other data in the calculation because "projected" is simply a modifier of the defined term "disposable income."  Therefore, to give meaning to every word of § 1325(b), "disposable income," as defined in § 1325(b)(2), must be "projected" in order to derive "projected

---

[26] *In re Alexander,* 344 B.R. at 747, *citing Lamie v. U.S. Trustee*, 540 U.S. 526, 533 (2004).

[27] *Id.*

[28] *Id.*, 344 B.R. at 749.

11

disposable income."[29]

The majority of courts find that the requirement of § 1325(b)(1)(B) that debtors fund a Chapter 13 plan with all "projected disposable income to be received" during the term of the plan is not plain and clear and construe the Code to not require strict reliance on the Form B22C calculations. This position, often called the forward-looking approach, has been adopted by the Tenth Circuit in *In re Lanning*.[30] Debtor Lanning experienced a precipitous decline in income between the historical 6 month period on which Form B22C was based and the date of filing. Her annualized current monthly income as shown on Form B22C was $64,124, whereas her disposable annualized income on Schedule I was $23,604. Her Schedule J expenses were $1,773 monthly, whereas her Form B22C monthly expenses were $4,228. Based upon I minus J, she had monthly disposable income of $149, but based upon Form B22C, her monthly disposable income was $1,114. The Chapter 13 Trustee objected to confirmation of any plan which devoted less income to the plan than $1,114 per month, arguing that a mechanical approach to calculating "projected disposable income" was required by BAPCPA. The Bankruptcy Court rejected the Trustee's position,[31] the Tenth Circuit Bankruptcy Appellate Panel affirmed,[32] and in a recent opinion the Tenth Circuit affirmed the panel decision.[33]

---

[29] *In re Kagenveama*, 541 F.3d at 872-873.

[30] *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269 (10th Cir. 2008).

[31] *In re Lanning*, 2007 WL 1451999 (Bankr. D. Kan. May 15, 2007).

[32] *In re Lanning,* 380 B.R. at 17.

[33] *In re Lanning*, 545 F.3d at 1269.

12

The *Lanning* panel characterized the minority view as reasoning that the "BAPCPA amendments did in fact eliminate bankruptcy court discretion and that Form B22C calculations are binding, regardless of changed circumstances."[34]  It characterized the majority view as typically reasoning "that Congress's use of the term 'projected' and the phrase 'to be received' in section 1325(b)(1)(B) indicates an intent that bankruptcy courts consider a debtor's *future* ability to pay in determining projected disposable income."[35]  The Tenth Circuit BAP rejected the mechanical approach and found that Congress did not eliminate bankruptcy court discretion when precisely defining disposable income.[36]  It stated:

> As noted by most of the courts attempting to resolve this issue, although BAPCPA added a definition of "disposable income," it neither defined nor modified the pre-existing term "projected disposable income."  Thus, BAPCPA linked "disposable income" to Form B22C current monthly income, which is a historically based figure, but it left "projected disposable income," which had an established pre-BAPCPA treatment, alone. . . . [P]re-BAPCPA, projected disposable income was not determined solely by a mathematical formula.  Although the amendments to section 1325 specify the formula by which to determine a debtor's median standing, as well as the monthly disposable income as of the date of the petition, they give us no reason to believe that Congress intended to eliminate the bankruptcy courts' discretion to deviate from an application of that formula where significant circumstances support doing so.
>
> Therefore, we agree with the courts that have found "disposable income" to be only the starting point in determining "projected disposable income" under section 1325(b)(1)(B).  Where it is shown that Form B22C disposable income fails accurately to

---

[34] *In re Lanning,* 380 B.R. at 22.

[35] *Id*.

[36] *Id*., 380 B.R. at 24-25.

Case 07-22352    Doc# 56    Filed 12/22/08    Page 13 of 26

> predict a debtor's actual ability to fund a plan, that figure may be
> subject to modification.[37]

The *Lanning* panel also addressed the standard for confirming a proposed plan when the "projected disposable income" deviates from the calculations reported on Form B22C. It observed that Chapter 7 debtors seeking to rebut the presumption of abuse based upon special circumstances are required by §§ 707(b)(2)(B)(ii) and (iii) to itemize their increased expenses or changes in income, to provide both documentation and a detailed explanation of the "special circumstances" they claim, and to attest to them under oath.[38] Given the similar use of the expenses reflected on Form B22C in the § 707 abuse determination and the § 1325(b) projected disposable income calculation, the *Lanning* panel found guidance in this special circumstances provision of §§ 707(b)(2)(B)(ii) and (iii). It therefore held that "parties contending that a debtor's Form B22C disposable income figure does not accurately project the debtor's future ability to fund a plan must present documentation similar to that required by section 707(b)(2)(B)(ii) in support of their claim."[39] The panel emphasized that deviation from the Form B22C calculation of disposable income will be the exception rather than the rule.[40]

After this case was taken under advisement, the Tenth Circuit affirmed *Lanning* [41] and rejected the mechanical approach. It held that "as to the income side of the § 1325(b)(1)(B) inquiry, the starting point for calculating a Chapter 13 debtor's 'projected disposable income' is

---

[37] *Id.*

[38] *Id.*, 380 B.R. at 25.

[39] *Id.*

[40] Id.

[41] *In re Lanning*, 545 F.3d at 1269.

14

presumed to be the debtor's 'current monthly income,' as defined in 11 U.S.C. § 101(10A)(A)(i), subject to a showing of a substantial change in circumstances."[42]  It carefully examined the leading cases adopting both the mechanical and forward-looking approaches and concluded that "each interpretation of the statutory language is not without problems."[43]  The difficulty with the forward-looking approach was found to be

> that it renders the new definition of "disposable income," with its link to historic "current monthly income," nearly meaningless unless one reads a presumption into the statute - that the defined term "disposable income" is just a starting point - which can be rebutted by showing a substantial change in circumstances bearing on how much the debtor realistically can commit to repayment of unsecured creditors as of the effective date of the plan.[44]

On the other hand, the court found that "[t]he main problem with the analysis in decisions adopting the mechanical approach is that little heed is given to three statutory phrases: 'as of the effective date of the plan,' 'to be received in the applicable commitment period,' and 'will be applied to make payments,' . . .."[45]  The circuit concluded that "these textual problems . . . outweigh the concern about implying a presumption."[46]  The statutory terms were read to provide that the debtor's actual circumstances at the time of confirmation are to be taken into account in order to project, or forecast, how much income the debtor with actually receive during the

---

[42] *Id.*, 545 F.3d at 1282.

[43] *Id.*, 545 F.3d at 1278.

[44] *Id.*

[45] *Id.* (statutory citations omitted).

[46] *Id.*

commitment period. The Tenth Circuit did not address what is required to show a substantial change in circumstances.

eCAST does not challenge *Lanning* as it relates to changes in income; however it contends that the consideration of changed circumstances permitted by *Lanning* applies only to "current monthly income" and not to "amounts reasonably necessary to be expended." Its primary authorities are *In re Arsenault*[47] and *In re Wilson*.[48] In *Arsenault*, Form B22C understated the income actually available because the historical-based income on Form B22C did not include a substantial annual bonus which was last paid to one of the debtors more than 6 months prepetiton. The court agreed with the majority view that the Form B22C is the presumptive starting point and that reasonably anticipated additional income, including the future annual bonuses, should be included in calculating the debtor's projected disposable income.[49] Although the expense side of the equation was not at issue, the court nevertheless considered the question and determined that "the reasons for looking beyond the calculations set forth in Form B22C for calculating income have no applicability to the calculation of expenses."[50] The court found it was clear that Congress meant to remove all judicial discretion for specific deductions set forth in §§ 707(b)(2)(A) and (B), and, as to expenses, the ambiguity between § 1325(b)(1)(B) and § 1325(b)(2) does not exist.[51] It therefore held the court has no discretion in determining what expenses are reasonably

---

[47] *In re Arsenault,* 370 B.R. 845 (Bankr. M.D. Fla. 2007).

[48] *In re Wilson*, 2008 WL 619196 (Bankr. M.D. N.C. 2008).

[49] *In re Arsenault,* 370 B.R. at 851.

[50] *Id*., 370 B.R. at 852.

[51] *Id.*

necessary for debtor's support, but must strictly follow § 1325(b)(3)'s directive that expenses be calculated under Form B22C without resort to Schedule J.[52]

In *Wilson*, debtor's Form B22C showed monthly disposable income of $392.52, but the difference between Schedule I income and Schedule J expenses showed monthly disposable income of $1,774.60. Debtor proposed a plan payment of $750 per month, and the Trustee objected. The court held that as to income, if the figures on Form B22C and Schedule I are different because of a substantial change in circumstances, then the court may consider Schedule I.[53] As to expenses, however, the court followed what it labeled a solid majority and held that § 1325(b)(3) controls and the court may not consider the debtor's expenses shown on schedule J.[54]

Other courts disagree and find that projected expense, like projected income, is a forward looking concept and the Form B22C figures are subject to modification. *In re Edmunds*[55] is an example. The Chapter 13 Trustee objected to confirmation asserting that debtors were not devoting all of their "projected disposable income" to their proposed plans because they were improperly deducting from their disposable income payments for certain secured debts that their plans will treat as unsecured because of planned surrender of collateral. Debtors responded that

---

[52] *Id.*

[53] *In Re Wilson*, 2008 WL 619196 at *14.

[54] *Id.*

[55] *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006). *See In re Renicker*, 342 B.R. 304 (Bankr. W.D. Mo. 2006) (finding that the plain language of 1325(b)(2) unambiguously indicated that prospective, not historic, expenses are to be used to calculate disposable income and holding that above median income debtors who shortly before filing had moved from Missouri, where they owned a home, to Colorado, where they rented, were limited to the IRS rental housing allowance for Colorado, unless they established special circumstances); *In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va. 2006) (holding that the expenses referred to in § 1325(b)(2) are amounts that a debtor will make in the future as provided in the debtor's plan so for purposes of the means test debtors could not include in the disposable income calculation contractual payments that debtors were not obligated to make on undersecured debt after bifurcating creditor's claim).

17

they were required to pay to unsecured creditors only the amounts determined by §§ 1325(b)(2) and (3). The court examined existing authority and rejected the mechanical application of the means test, the cases finding B22C presumptively correct, and adopted a modified means test, which it labeled the majority position.[56] As to the mechanical application of the Form B22C calculation of expenses, which eCAST urges this Court to adopt, it found the "word 'projected' is relevant to determine allowed expenses because 'projected' modifies 'disposable income,' which is a computation of both income and expenses."[57] The phrases "to be received in the applicable commitment period," in § 1325(b)(1)(B), and "necessary to be expended," in § 1325(b)(2), were also identified as forward looking. Finally, it noted that expenses as defined by § 707(b)(2) include some actual expenses, which must be determined by reference to Schedule J and the debtor's treatment of debts in his plan.

eCAST contends that the Tenth Circuit's decision in *Lanning* follows the rule of *Arsenault* and *Wilson* and holds that departure from Form B22C is allowed only for income. It cites the *Lanning* bankruptcy court decision, in which Bankruptcy Judge Karlin considered the issue of whether, after determining the monthly income figure, the court "should subtract the expenses shown on Form B22C . . . or those shown on Schedule J."[58] She answered this "either or question" by holding that Form B22C controlled, because to use Schedule J expenses would read out of the calculation all references to the IRS national and local standards, contrary to the Code. The Tenth Circuit BAP when affirming the bankruptcy court did not separately address the

---

[56] *In re Edmunds*, 350 B.R. at 643.

[57] *Id.*

[58] *In re Lanning*, 2007 WL 1451999 at *7.

18

expenses question, and this Court does not understand the BAP *Lanning* panel to have adopted a rule of strict construction of §1325(b)(2) with respect to expenses.[59]  The Tenth Circuit, when affirming the BAP panel, noted that the issues on appeal did not include the bankruptcy court's holding that "Ms. Lanning's Form B22C expenses were the relevant expenses for purposes of arriving at her 'projected disposable income.'"[60]  There is no binding precedent on the method for determining the expense side of the projected disposable income calculation.

This Court declines to adopt eCAST's position that the mechanical approach based upon the calculations reported in Form B22C should be adopted as to projected expenses.[61]  Although the objection to confirmation in *Lanning* arose from a downward adjustment of income from that calculated using the § 101(10A) definition, as reported on Form B22C, the Tenth Circuit's analysis is equally applicable to plans where the expenses used in calculating "projected disposable income" deviate from those calculated as of the date of filing under § 707(b)(2), as reported on Form B22C.  As found by the Tenth Circuit, "projected" in § 1325(b)(1)(B) links "disposable income" with "to be received in the applicable commitment period" and requires "the debtor's actual circumstances at the time of plan confirmation [be] taken into account in order to 'project' (in other words, to 'forecast') how much income the debtor will actually receive during the commitment period . . .."[62]  "Disposable income" as defined in § 1325(b)(2), has two

---

[59] The Court does note that the West head notes published with the *Lanning* BAP decision appear to support this position, but the head notes are written by West, not the courts.

[60] *In re Lanning*, 545 F.3d at 1274, n.4.

[61] Chief Judge Nugent of this Court agrees.  In *Hass* he states, "Although *Lanning* involved the income side of the disposable income equation, the same rationale may be applied to projecting expenses." *In re Hass*, No. 08-10365 and *In re Arroyo*, No. 07-12779, slip op. at 14 (Bankr. D. Kan. August 20, 2008).

[62] *In re Lanning*, 545 F.3d at 1279.

components, "current monthly income" and "amounts reasonably necessary to be expended."

Determination of "disposable income" to be "received during the applicable commitment period"

requires consideration of both the income, which *Lanning* teaches may be based upon the

"debtor's actual circumstances at the time of plan confirmation," and anticipated expenses for the

same period of time.  Section § 1325(b)(1)(B), construed by *Lanning*, by addressing *disposable*

income, as opposed to gross income, is also applicable to projected expenses.

Subsections 707(b)(2)(A) and (B), which § 1325(b)(3) directs shall be used to determine

"amounts reasonably necessary to be expended," do not specify a generally applicable date for the

determination of expenses.  The subsection only specifies that the applicable Internal Revenue

Standards used shall be those "in effect on the date of the order for relief"[63] and that, as to secured

debts, the calculation shall be based upon the "total of all amounts scheduled as contractually due

to secured creditors in each month of the 60 months following the date of the petition."[64]  The

Code does not address the expense side of the projected disposable income calculation in a

manner which conflicts with the *Lanning* court's reasoning regarding income.  This Court

therefore holds that the debtor's actual circumstances at the time of plan confirmation may be

taken into account in order to project, that is to forecast, the amounts reasonably necessary to be

expended during the commitment period.

It is true that as to expenses Congress precluded discretion as to some expenses by

prescribing the use of national and local standards, but some of these standards are based upon

factors which may change between the dates of filing and confirmation.  As examined above,

---

[63] 11 U.S.C. § 707(b)(2)(A)(ii)(I).

[64] 11 U.S.C. § 707(b)(2)(A)(iii).

Case 07-22352   Doc# 56   Filed 12/22/08   Page 20 of 26

some allowed expenses are debtor's actual costs, which of course at the time of confirmation may be projected to be more or less than those stated on Form B22C. The allowed deduction from income for payments to secured creditors under § 707 is based upon the amounts "contractually due" for the 60 months following the date of the petition. At the time of confirmation amounts due may have changed for various reasons, including surrender of collateral or lien stripping.[65] This Court finds that the incorporation of § 707(b)(2) into § 1325(b)(3) confines but does not eliminate discretion as to projected expenses.

However, this Court does not understand *Lanning* to approve the adoption in toto of Schedule J, as to expenses, or Schedule I as to income, even when changed circumstances are shown. This Court frames the issue not as one of using either Form B22C *or* Schedules I or J but rather as *of when and to what* extent the monthly plan payments may be different from the "monthly disposable income" calculated using Form B22C. The Court agrees with *Arsenault*, *Wilson*, and the *Lanning* Bankruptcy Court when they observe that § 707 precludes the wholesale use of actual expenses (as in Schedule J), mandates the use of IRS standards for many items, and limits the expense items which may be considered for adjustment. But in this Court's view, this does not mean there can be no deviation from Form B22C with respect to the allowed actual expenses or adjustment of the standard expenses when there has been a relevant change of circumstances as of the plan confirmation date.

Hence, in order to overrule an objection to confirmation because the monthly income to be paid into the plan is not equal to the monthly disposable income reported on Form B22C, the

---

[65] *See In re Hass*, No. 08-10365 and *In re Arroyo*, No. 07-12779 (Bankr. D. Kan. August 20, 2008) (holding that when a plan provides for surrender of collateral, the secured debt payments which were contractually due prepetition should not be included on Form B22C).

21

court must find there has been a change in circumstances, documented in a manner similar to that specified by § 707(b)(2)(B)(ii).[66] As this Court interprets *Lanning*, the change in circumstances contemplated is a change from those which were the basis for the Form B22C figures, such as a change of employment, a change in household size or circumstances, moving to a different community, or change in secured debt.[67] Second, the modified income or expenses must be in conformity with elements of income and expenses permitted by the Code. The discretion regarding projected disposable income does not extend to deviating from the Code definition of current monthly income. Likewise, as to expenses, the Court's discretion in deviating from Form B22C is significantly constrained because § 1325(b)(3) incorporates § 707(b)(2), thereby requiring use of the IRS national and local standard expenses for some items. This means that many expenses may not be based upon the debtor's actual expenses as reported on Schedule J. The result is that projected disposable income, calculated in accord with the Code, will often be materially different from disposable income calculated using Schedules I and J, even when material changes in circumstances are proven. Congress intended that the ability of a debtor to

---

[66] This interpretation of the changes allowed by *Lanning* is in addition to consideration of special circumstances which existed prior to filing, which can be the basis for deviating from the strict confines of § 707 expenses for purposes of the presumption of abuse. Section 1325(b)(3) when defining "amounts reasonably necessary to be expended" by above median debtors refers to § 707(b). It therefore incorporates not only § 707(b)(2)(A), which defines debtor's monthly expenses, but also § 707(b)(2)(B), which allows a debtor to rebut the presumption of abuse which would otherwise arise by showing special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. This Court has construed this provision in *In re Champagne*, 389 B.R. 191 (Bankr. D. Kan. 2008). Therefore, for purposes of confirmation, the court, in addition to the discretion identified in *Lanning*, also may approve adjustments based upon special circumstances, if properly supported, which could have been offered to rebut abuse.

[67] *See In re Renicker*, 342 B.R. at 304 (denying confirmation of a plan in part because debtors, who moved to Colorado shortly before filing, failed to support their claim of housing expenses in excess of the IRS standard); *see also In re Hass*, case no. 08-10365 and *In re Arroyo*, case no. 07-12779 (Bankr. D. Kan. August 20, 2008) (holding that when a plan provides for surrender of collateral, the secured debt payments which were contractually due prepetition should not be included on Form B22C).

22

rebut the presumption of abuse by showing special circumstances not "be used as a convenient way for debtors to choose a more expensive lifestyle."[68] Likewise, a debtor's ability to deviate from the § 101(10A) definition of current monthly income and the § 707(b)(2) definition of monthly expenses because of a substantial change in circumstances may not be used to justify an expensive life style. Therefore, the permitted discretion does not guarantee that all above median income debtors who are required by the means test to file under Chapter 13 rather than Chapter 7 will be able to propose a feasible plan which devotes their projected disposable income, calculated under § 1325(b), to a Chapter 13 plan without a change in life style.[69] Congress mandated the method for calculating disposable income, and the Court, under the guise of change of circumstances, may not simply revert to the pre-BAPCPA calculation of projected disposable income.

Therefore the Court holds that Debtor has the opportunity to assert that special circumstances justify deviation from strict reliance on Form B22C for the calculation of projected disposable income, including both the income and expenses components of the calculation, provided proper support is presented. Although the question of confirmation is not under advisement, the Court notes that although projected disposable income in Debtor's plan is the difference between Schedule I income and Schedule J expenses, nothing has been presented evidencing a substantial change in special circumstances to support the deviation from Form B22C. Further, it appears that by relying on Schedule J expenses, debtor may be using actual

---

[68] *In re Champagne*, 389 B.R. at 197, citing S. Rep. 106-49, at 6-8 (1999).

[69] *See In re Riding*, 377 B.R. 239, 242-43 (Bankr. W.D. Mo. 2007)(discussing the dilemma of above median income debtors who, because of the means test are not eligible for Chapter 7 relief, but who can not propose a feasible plan because their anticipated actual income is less that their projected disposable income calculated under § 1325(b)).

23

expenses when the Code requires expenses based upon IRS national and local standards. Under the foregoing standard, Debtor's proposed plan could not be confirmed.

### B. BURDEN OF PROOF WHEN A CREDITOR OBJECTS TO CONFIRMATION UNDER § 1325 (b).

The Debtor also raises the question of the allocation of the burden of proof when a creditor objects to confirmation under § 1325(b).[70] The Tenth Circuit BAP has answered this question with respect to objections based upon noncompliance with §1325(a). It follows the line of cases which hold that the party who seeks discharge under Chapter 13 has the burden of proof that the requirements of § 1325(a) have been met.[71] In so holding, it followed *Davis*,[72] a prior Tenth Circuit BAP case, which held that "the party who seeks discharge under Chapter 13 bears the burden of proving good faith." A competing line of cases, which hold that the creditor who raises an objection to confirmation under § 1325(a) "should be required to bear the initial evidentiary burden of persuasion to show that competent evidence supports the objection" was rejected.[73] The Court knows of no reason to distinguish objections under § 1325(a) from objections that the requirements of § 1325(b) are not satisfied. It therefore holds that when a creditor objects to confirmation under § 1325(b), the debtor, as the proponent of a plan, has the ultimate burden of proof to show that a proposed plan satisfies the projected disposable income requirement for confirmation.

---

[70] *See* 7 Norton Bankr. Law & Pract. 3d § 151:2 (Thompson/West 2007) (noting split of authority of allocation of the burden of proof at a hearing on confirmation of a Chapter 13 plan).

[71] *In re Alexander*, 363 B.R. 917, 921-22 (10th Cir. BAP 2007).

[72] *In re Davis*, 239 B.R. 573, 577 (10th Cir. BAP 1999).

[73] *In re Alexander*, 363 B.R. at 921.

24

The question of the allocation of the burden of proof is closely related to the question of which party has the burden of production of evidence. Some plans are confirmed without presentation of evidence. When there is no objection, the court may confirm a plan without receiving evidence on whether the plan is proposed in good faith and not by any means prohibited by law.[74] Of course, some objections to confirmation may be based solely upon questions of law for which no evidence is required by either party. However, when an objecting party relies upon issues of fact, the debtor has the burden to produce evidence to rebut evidence introduced in support of the objection by the trustee or a creditor.[75] If an objecting party challenges the debtor's deviation from Form B22C, under *Lanning,* the debtor has the burden to provide documentation to show that circumstances warrant the deviation and to rebut the objecting party's evidence to the contrary.

**CONCLUSION.**

For the foregoing reasons, the Court holds that when there is an objection to confirmation under § 1325(b) and a party contends that the monthly disposable income reported on Form B22C does not accurately reflect ability to fund a plan, Form B22C calculations need not be strictly followed but any such deviation must be supported by documentation similar to that described in § 707(b)(2)(B). Further, the deviation of income and expenses may not be a wholesale reliance on Schedules I and J, but must be adjustments of individual items reflected on Form B22C based upon special circumstances, while remaining consistent with the applicable Code definitions,

---

[74] *See* Fed. R. Bankr. P. 3015(f), which provides in part: "If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."

[75] *In re Alexander*, 363 B.R. at 922 (stating that "once there has been an objection, the debtor must produce some affirmative evidence of his good faith").

including those expenses which are based upon the IRS national and local standards.  When there is an objection to confirmation, the debtor has the burden of proof to establish that the proposed plan conforms to the Code confirmation requirements.

**IT IS SO ORDERED.**

*###*